## Bernat et ux. v. Licht et al.

*L. E. Lloyd,* for complainants.

*S. R. Di Francesco,* for respondents.

McKENRICK, J., February 19, 1946.—This case is not, in our view, a difficult one. The testimony clearly indicates that plaintiffs entered into possession for the purpose of conducting a grocery store, a business formerly operated by a Mrs. Young. The premises were so constructed as to be available for a small grocery store and had no conveniences which are usually incident to a dwelling. After about two years plaintiffs converted two rooms in the rear of the main grocery department into dwellings, and moved in with their children. No express permission was obtained from the owners of the building, but they acquiesced only because it was understood to be a temporary arrangement until other quarters could be obtained. Later, plaintiffs did purchase a four-room house on the lot adjoining the Licht building, but continued to reside in the rear of the store. Still later, plaintiffs made alterations and improvements to the building which was rented originally

as a grocery store, and installed equipment for the conduct of a potato chip business. This business has grown to large proportions, and the gross receipts for the past year from the potato chip business and the small grocery business were $23,000. The rent paid for the premises, originally $10, now $11.50 per month, is the entire income which defendants received from the premises occupied as a grocery store and storage, dwelling apartment of plaintiffs' family, and the potato chip factory, where several people are employed. The dwelling house which plaintiffs purchased is used for the storage of potatoes and other materials used in the potato chip business and not for living quarters.

It was contended, in order to support plaintiffs' theory, that the living quarters extended throughout the entire building, because the children played in and about the store and the bath room was located in the basement, where the potato chips are manufactured. Plaintiffs contend that the whole premises is charged with the character of a dwelling and is, therefore, within the purview of the Office of Price Administration. The circumstances under which the premises were registered with the OPA for rent control are as follows: The Lichts owned a double house which was rented to tenants and was clearly subject to rent control. Learning that it was necessary to register buildings rented for dwelling purposes, Valentine Licht went to the OPA in the City of Johnstown and properly registered the premises subject to rent control. Some clerk in charge of the office asked him if he had any other premises for rent. Licht informed the clerk that two rooms of a store building were being used as a dwelling and he was told that he would be required to register them to comply with regulations. Notwithstanding that the greater and major portion of the building was used commercially and was not within the purview of the statutes relating to registration of

premises, Valentine Licht inadvertently and mistakenly made the registration. Clearly, under the overwhelming evidence in this case, the premises was not such as was within the jurisdiction of the OPA and, if the premises had not been registered, the OPA could assume no jurisdiction. Perhaps defendants should have withdrawn the registration. However, that does not militate against them in this proceeding.

The lease having fully expired, the landlords were not under any obligation to assign a specific reason for their desire to terminate the possession of plaintiffs. It is true that the notice to remove did contain an allegation that plaintiffs had violated certain conditions in their lease. We consider that statement surplusage and think it has no bearing on the present case.

Our attention has been called to Steiner v. Central Trust & Title Co., 274 Pa. 341, as authority for the legal position which plaintiffs have taken in this proceeding. It will be noted that in the Steiner case the lease under which the tenant held did not expire until March 31, 1926, with a privilege of five additional years to begin April 1, 1926. The tenant was alleged to have violated the National Prohibition or Volstead Act, he being specifically charged with the sale of two glasses of liquor on the demised premises, "by one of his employees". Central Trust & Title Company, on November 30, 1920, by resolution of its board of directors, declared plaintiff's lease forfeited because of his violation of a Federal law and, on December 1, 1920, gave plaintiff a written notice to vacate. When he failed to remove from the premises defendant, on January 8, 1921, summoned him to appear before a justice of the peace in a possessory action under the Act of December 14, 1863, P. L. (1864) 1125. The Act of 1863, 68 PS §364, provides that:

"Where any person . . . in this state . . . having leased . . . lands or tenements to any person . . . for a term of . . . years . . . shall be desirous, upon the

termination of said lease, to have again and repossess such demised premises, having given three months' notice of such intention to his lessee, . . . and said lessee . . . shall refuse to leave . . . at the expiration of said term, in compliance with . . . said notice, it shall be lawful for such lessor . . . to complain thereof to any justice of the peace . . . whose duty it shall be to summon the defendant . . . and, upon due proof being made . . . that the term . . . is fully ended, and that three months' previous notice had been given . . . then and in that case (judgment of possession may be rendered for plaintiff)."

An injunction was obtained to prevent respondent in the bill from proceeding in an action before a justice of the peace. The court there held that equity had jurisdiction to restrain the proceedings under the Act of 1863. It will be noted, however, upon an examination of the same, and the same appears in the opinion on page 344:

"In the case at bar, no three months' notice to quit and no such 'expiration' of the term as contemplated by the Act of 1863 are alleged. Moreover, that which is depended upon by defendant as an equivalent, namely, the violation by plaintiff of the Volstead Act,—through the sale of two glasses of liquor on the demised premises, by one of his employes,—presents, from constitutional and other aspects, many nice and intricate questions of law, as yet undetermined by the courts, with which, of course, a justice of the peace is entirely unfitted to cope. Under the circumstances, the court below was quite right in ruling that the act invoked did not apply."

In the case which we have for determination, the lease had fully expired. The lessors were entitled to their premises and they did not need to assign any particular reason for repossession, nor did they need to allege a violation of the lease or a violation of

the law. In the Steiner case we have just cited, the lease had many years to run and the landlords there attempted to shorten the term of the lease by alleging a violation of the law. Clearly, the Steiner case was not one within the purview of the Act of 1863, which expressly provides that the lease shall have been terminated and three months' notice given to remove. The case we have is, therefore, not bound by the decision in the Steiner case, referred to. There was no complicated question involved in the case. The only question which could have been considered by the alderman was the objection on the part of plaintiffs that the OPA had jurisdiction by reason of the inadvertent registration of the premises. The alderman was in a position to know that the OPA had no jurisdiction where the greater part of the premises was used commercially, and he did not need to interpret court decisions to acquire that information and knowledge.

If the contention of plaintiffs is to prevail, the registration of a few rooms in a large commercial building would prevent the owner from terminating his leases on business establishments so long as one of the business operators resided in the building. The OPA regulations were designed to protect tenants, but they were not intended to oppress owners of premises who were not subject to their regulations. It occurs to us that plaintiffs are attempting to operate commercial enterprises against the wishes of the landlords by using the OPA as a shield. More than that, defendants Licht are faced with prosecution for permitting their building to be used in violation of the laws of the Commonwealth. Notwithstanding the notice which plaintiffs have had from the authorities from time to time, they are persisting in ignoring the rights of the owners to control their own premises. In view of the testimony of Fire Department Chief Moran, we wonder how de-

fendants Licht are able to carry insurance on the building housing the potato chip factory of plaintiffs. It seems to us that plaintiffs in the bill do not come into equity with clean hands, when they admit they have constantly and habitually violated statutes and ordinances in the conduct of their business, yet expect equity to continue them in possession. Certainly the owners of a building have the right to its use and occupancy after the termination of the tenant's lease, and if the tenant fails to remove after legal notice the owners may invoke the law.

It has been suggested, however, that the proper remedy is ejectment. We cannot conceive that during the pendency of any drawn out ejectment proceedings plaintiffs would even attempt to comply with the rules of safety and eliminate the dangerous fire hazard which has long existed, nor would they cease operations which are in violation of the zoning laws of the city.

Under all the circumstances in this case, we believe the proceedings before the alderman were lawful and regular, and we should not interfere with the process of the law.

### Conclusion of Law

1. Under the facts and the law in this case, equity had no jurisdiction to restrain the alderman. The injunction heretofore issued should be dissolved and the bill dismissed, at the cost of plaintiffs.

### Decree Nisi

And now, February 19, 1946, after hearing and upon due consideration, it is ordered, adjudged and decreed that the injunction heretofore issued be dissolved, and the bill dismissed at the cost of plaintiffs.

Unless exceptions are filed hereto within 10 days notice of the filing of the same, this decree nisi shall become the final decree in the above stated case.